**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                     )
CHARLES LUDLAM, et al.,              )
                                     )
            Plaintiffs,              )
                                     )   Case No. 11-1570 (EGS)
         v.                          )
                                     )
                                     )
UNITED STATES PEACE CORPS,           )
                                     )
            Defendant.               )
_____  )
```

<u>**MEMORANDUM OPINION**</u>

This Freedom of Information Act ("FOIA") case is before the Court on defendant the United States Peace Corps' Motion to Dismiss or, in the Alternative, for Summary Judgment.  For the reasons explained below, the Motion to Dismiss will be **GRANTED** and the Motion for Summary Judgment will be **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

Plaintiffs Charles Ludlam and Paula Hirschoff are former Peace Corps volunteers.  Both plaintiffs have been advocates for strengthening and revitalizing the Peace Corps; they have served on the boards of non-profit organizations supporting returned Peace Corps volunteers and testified before Congress on behalf of current Peace Corps volunteers.  Compl. ¶¶ 3-5.

On April 15, 2009, plaintiffs submitted a FOIA request seeking
production, in electronic format, of a country-by-country
breakout of the Peace Corps' 2008 survey of its Volunteers.
Compl. ¶ 18.  The Peace Corps acknowledged the information
existed, but stated that it "is not available in the format
[plaintiffs] asked for."  Compl. ¶ 24.  The Peace Corps informed
plaintiffs that it would cost anywhere from approximately $850 –
$3100 for the Peace Corps to search for and produce the
information, and that production would not be electronic.  *Id.*
¶¶ 24-28.

On May 27, 2009, plaintiffs filed an appeal of the Peace
Corps' decisions regarding the document production format and
costs.  *Id.* ¶ 29.  While the appeal was pending, plaintiffs were
approached by a Peace Corps staffer who informed plaintiffs that
the country-by-country breakout of the 2008 survey was
available, in electronic format.  *Id.* ¶ 31.  The staffer emailed
the information to plaintiffs, who then posted it on the
PeaceCorpsWiki website.  *Id.* ¶ 31.  On June 24, 2009, the Acting
Director of the Peace Corps Office of Management emailed Ludlam,
noted that the information he sought was available on
PeaceCorpsWiki, and concluded "it doesn't appear necessary for

[the Peace Corps] to continue to staff your request for these."
*Id.* ¶ 33.

On December 16, 2010, Ludlam submitted a second FOIA request,
seeking "a copy of the Peace Corps comprehensive survey of the
Volunteers for 2009 and 2010, [including] the worldwide results
and the breakouts of the results country by country and program
by program for each country."  *Id.* ¶ 40.[1]  On March 17, 2011, the
FOIA officer provided aggregated worldwide summary results of
the 2009 and 2010 Annual Volunteer Surveys ("AVS"), but informed
Mr. Ludlam that the individual country and program survey
results were withheld under Exemptions 5 and 6 of FOIA.  *Id.* ¶
48.  Specifically, the agency claimed the information sought was
exempt from disclosure because it was covered by the
deliberative process privilege, or because it involved matters
of personal privacy.  *Id.*

Mr. Ludlam appealed the decision on March 18, 2011.  In his
appeal, Mr. Ludlam narrowed his request to omit Volunteer
responses to "open-ended questions" in the AVS.  *Id.* ¶ 49.  On
April 15, 2011, Earl Yates, Associate Director for Management at
the Peace Corps, released to Mr. Ludlam the 2009 and 2010
results on a regional level. See Miller Decl. ¶ 17.  However,

---

[1]  Each Peace Corps post has a number of programs or "projects"
such as education, health and agriculture.  Defendant's Motion
to Dismiss or for Summary Judgment ("Def.'s Mot.") Att. B,
Declaration of Denora Miller ("Miller Decl.") ¶ 16.

Yates denied his appeal for country-by-country and program-by-program responses, citing the same Exemptions.  *Id.* ¶ 12, 17.

Plaintiffs filed this action on August 31, 2011, challenging only the denial of the December 16, 2010 FOIA request.  Shortly thereafter, the Peace Corps released additional information to Mr. Ludlam.  On or about January 31, 2012, the Peace Corps provided Ludlam a significant portion of the country-by-country and program-by-program AVS results for 2009 and 2010.  Miller Decl. ¶ 14.  The Peace Corps continued to withhold, in whole or in part, Volunteer responses to seven questions in the 2009 AVS and ten questions in the 2010 AVS on a country-by-country and program-by-program breakouts.  *Id.*  On February 2, 2012, the defendant moved to dismiss, or in the alternative, for summary judgment.  The motion is now ripe for the Court's decision.

## II.  STANDARD OF REVIEW

### A. Motion to Dismiss

Exhaustion of administrative remedies in FOIA cases is "generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) (overruled in part on other grounds).  FOIA requires the requester to exhaust administrative remedies; when a

defendant disputes that a FOIA plaintiff has done so, the matter is properly the subject of a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1260 (D.C. Cir. 2003).

### B. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)).

5

### C. FOIA

FOIA requires agencies to disclose all requested agency records, 5 U.S.C. § 552(a), unless one of nine specific statutory exemptions applies, *id*. § 552(b).  It is designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citations omitted).  "Given the FOIA's broad disclosure policy, the United States Supreme Court has 'consistently stated that FOIA exemptions are to be narrowly construed.'" *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).

"FOIA's strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted).  The government may satisfy its burden of establishing its right to withhold information from the public by submitting appropriate declarations and, where necessary, an index of the information withheld. *See Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the

6

record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. Dep't of the Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see id.* (an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible) (internal citations omitted).

### III. DISCUSSION

#### A. Dismissal as to Plaintiff Hirschoff

The Peace Corps argues that plaintiff Paula Hirschoff must be dismissed from this case because she did not file the December 16, 2010 FOIA request, which is the only request at issue in this lawsuit. Def.'s Mot. at 6-8. The plaintiffs do not oppose defendant's argument. Plaintiffs' Opposition to Motion to Dismiss or for Summary Judgment at 5-6 ("Pls.' Opp'n"). Accordingly, the defendant's motion to dismiss plaintiff Hirschoff is **GRANTED.**

The parties also do not dispute that the remaining plaintiff, Charles Ludlam, has properly exhausted his administrative remedies. Accordingly, the dismissal of Ms. Hirschoff does not impact the Court's ability to consider the case on its merits.

### B. Waiver

As a threshold matter, plaintiff argues that the Peace Corps has waived the right to invoke Exemptions 5 and 6 regarding the withheld responses from the country-by-country and program-by-program breakouts of the 2009 and 2010 AVS. Plaintiff claims waiver because (1) the agency previously disclosed the responses from substantially similar questions in the 2008 Volunteer survey, and (2) Peace Corps leaders are encouraged to, and do, share the 2009 and 2010 AVS responses with other with other Peace Corps staff.  Pls.' Opp'n at 31-34. Defendant, by contrast, contends that the plaintiff cannot demonstrate that the responses to the 2009 and 2010 AVS surveys match the responses to the 2008 surveys; therefore, the Peace Corps has not waived any FOIA exemption.  Def.'s Reply at 24-25. For the reasons discussed below, the Court agrees with defendant and finds that no waiver occurred.

In this Circuit, the "public-domain doctrine" has emerged as the dominant paradigm for evaluating the waiver of a potential FOIA exemption.  "Under [the] public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (citations omitted).  The logic of this doctrine is that "where information requested 'is truly public,

then enforcement of an exemption cannot fulfill its purposes.'"
*Id.* (citations omitted).  "[A] plaintiff asserting that
information has been previously disclosed bears the initial
burden of pointing to specific information in the public domain
that duplicates that being withheld." *Public Citizen v. Dep't
of State*, 11 F.3d 198, 201 (D.C. Cir. 1993).  An allegation that
similar information has been released is not sufficient.  *Id.*

In this case, plaintiff's waiver argument fails because he
has not shown that the withheld responses match any information
already in the public domain.  He argues only that the *question*s
contained in the 2009 and 2010 AVS are substantially identical
to the questions in the 2008 survey.  However, as defendant
notes, it is the *responses* to the surveys that plaintiff seeks,
not the questions.  Def.'s Reply at 25.  Considering that the
responses to the later surveys were provided by a different
group of volunteers, regarding their experiences during a
different time period, the responses will not be identical to
those provided in 2008.  Certainly, the plaintiff has not
demonstrated, with specificity, that the previous disclosure
duplicates withheld information.

The fact that the Peace Corps encouraged readers of the
surveys to share information with other staff cannot salvage
plaintiff's claim of waiver.  While agency leaders may have

disseminated the survey results within the agency, the plaintiff has not shown that Peace Corps officials were authorized to, or did, release 2009 or 2010 survey results to the general public outside the agency. *See Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 92, 100 (D.D.C. 2011).

Accordingly, the Court finds that the Peace Corps has not waived its right to invoke Exemptions 5 and 6 with respect to the withheld material.

### C. Exemption 6

Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). A determination of proper withholding under Exemption 6 proceeds in two stages.  First, the Court must decide if the information is subject to protection, specifically, whether the information is contained in a personnel, medical, or similar file, and if so, whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest.  If no significant privacy interest is implicated, (and if no other Exemption applies), FOIA demands disclosure." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).  If, on the other hand, a substantial privacy interest is at stake, the Court must then "weigh the privacy interest in nondisclosure

against the public interest in the release of records in order
to determine whether, on balance, the disclosure would work a
clearly unwarranted invasion of personal privacy." *Lepelletier
v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal quotation
marks omitted).  The agency bears the burden to persuade the
Court that the exemption applies.  *Ripskis v. HUD*, 746 F.2d 1, 3
(D.C. Cir. 1984).

The Peace Corps argues that Exemption 6 applies to three
types of questions in the 2009 and 2010 AVS.  The Court will
address them in turn.

### 1. First Type of Question:  Rating Staff Performance

The Peace Corps withheld complete or partial answers to
several questions regarding staff performance.  First, it
withheld the answers to questions F2 in the 2009 AVS survey and
F3 in the 2010 survey.[2]  These questions are identical, and ask
"How satisfied are you with the health care received from your
PCMO(s) [Peace Corps Medical Officer]?"  The Volunteers can
provide six possible responses ("Not at all, Minimally,
Adequately, Considerably, Exceptionally and Not Used").

---

[2]  Unless otherwise noted, the Court takes all facts regarding
the questions and withheld responses from the Defendant's
Motion, Exhibit 10 (Table of Withheld Responses); Exhibit 1
(2009 AVS), Exhibit 2 (2010 AVS), and Exhibit 14 (Vaughn index),
as well as Plaintiff's Opposition, Exhibit 1 (Chart of Withheld
Responses).

The Peace Corps also withheld partial answers to identical questions F3 (2009 AVS) and F4 (2010 AVS). These questions ask "How satisfied are you with the following support provided by in-country Peace Corps staff?" and permitted the following responses: "Not at all, Minimally, Adequately, Considerably, Exceptionally and Not Used." The questions were then broken out into separate sub-questions for ten different staff positions/functions. Of these ten, the Peace Corps withheld responses as to four: Medical, Safety and Security, Site Selection and Preparation, and Technical Skills.

Partial responses to identical questions F6 (2009 AVS) and F6 (2010 AVS) were also withheld. These questions ask "How would you rate your interaction with post staff?" and permitted the responses of "Adequate" or "Not Adequate." The questions were broken into separate sub-questions as to four topics: "responsiveness to my issues," "informative content," "My comfort level discussing issues," and "Adequacy of Visits/Visits to your site." They were further broken out into separate sub-questions for eight different staff positions. Of these eight, the Peace Corps withheld responses for six: Country Director, Program Training Officer/Sub-Regional Program Training Coordinator, Associate Peace Corps Director/Program Manager, PCMO, Safety and Security Coordinator, Training Manager.

Finally, questions F7 (2009 AVS) and F9 (2010 AVS) ask "To
what extent is your Country Director aware of Volunteer issues
and concerns through interactions with Volunteers?" and permits
responses of "Not at all, Minimally, Adequately, Considerably,
Completely/Exceptionally."

### 2. Second Type of Question:  Insensitive and Discriminatory Conduct/Harassment

The Peace Corps partially withheld the answer to question
G2 (AVS 2010).  This question asks whether Volunteers "[H]ave
encountered insensitive comments or behavior toward you based on
your race, ethnicity, age, gender, or sexual orientation from
any of the following sources?"  Volunteers could respond Yes,
No, or Not Applicable.  The question is separated into four
categories of people who might have engaged in such conduct.
The Peace Corps withheld responses for two categories:
Host/Homestay Family and Community members.

Responses to question G3 (AVS 2010) were also partially
withheld.  This question asks Volunteers to report any
discrimination/harassment they have encountered.  The question
identifies several types of discrimination: age, anti-American,
disability, gender, racial/color, religious, sexual orientation,
sexual (physical) and sexual (verbal).  Volunteers could respond
with the number of times they had (i) encountered that type of
harassment/discrimination, and (ii) reported it to the Peace

13

Corps.  The question is further broken down into seven different categories of persons responsible for the harassment.  The Peace Corps has withheld responses for two of the categories: "counterpart, supervisor, co-worker (not Peace Corps)" and "Host Country Family Member."

### 3. Third Type of Question: Crime

The Peace Corps partially withheld responses to question G4 (2010 AVS), which asks whether Volunteers were victims of any of several different types of crime committed by several different categories of individuals.  Volunteers could respond by identifying the number of times they had (i) experienced that type of crime, and (ii) reported it to the Peace Corps.  The Peace Corps has withheld the responses to three of the crimes listed -- sexual assault, rape, and attempted rape -- for two categories of individuals – "counterpart, supervisor or co-worker (not Peace Corps)" or "host country family member."

### 4. Analysis

#### a. Only the Questions Rating Staff Performance Satisfy The Threshold Requirement for Exemption 6

Exemption 6 allows an agency to withhold personal identifying information, such as "place of birth, date of birth . . . employment history, and comparable data," if disclosure of such information "would constitute a clearly unwarranted

14

invasion of personal privacy." *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600 (1982). By contrast, "[i]nformation unrelated to any particular person presumably would not satisfy the threshold test." *Id.* at 602 n.4. Specifically, Exemption 6 does not apply if there is no "substantial likelihood that any concrete facts about a particular individual could be inferred" as a result of the release of the withheld information. *Horner*, 879 F.2d at 878; *see also Dep't of Air Force v. Rose*, 425 U.S. at 380 n. 19 ("Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities"); *Arieff v. Department of the Navy*, 712 F.2d 1462, 1468 (D.C. Cir. 1983) (Exemption 6 only applicable where the release of information leads to likelihood of actual identification; release of information leading to increased speculation about individuals is not subject to withholding).

In this case, the Peace Corps has met the threshold with respect to the first category of questions withheld – those related to staff ratings. The agency has explained that it withheld responses that rate specific staff positions, and at the country or project level, these positions are "typically filled by one person or a few at most." Benjamin Decl. ¶ 14. The plaintiff has provided no information to the contrary. Accordingly, there is more than a "mere possibility" that

employment ratings data could be linked to a particular individual if this information were released.  Moreover, employees have a substantial privacy interest in their employment ratings data.  *See, e.g.*, *Fed'l Labor Relations Authority v. Dep't of Commerce*, 962 F.2d 1055, 1059 (D.C. Cir. 1992) (employee ratings containing either favorable or derogatory information is personal information subject to Exemption 6); *Ripskis*, 746 F.2d 1 (same).[3]

   The Peace Corps has not met the threshold exemption, however, for responses to the second or third types of questions.  As set forth above, the second type of question relates to insensitive comments or behavior from Volunteers' (a) host families or (b)community members, or discrimination/ harassment they have encountered from their (a) counterparts, supervisors, or co-workers, or (b) host families.  On their face, these categories seem very likely to include a large number of individuals, and the agency has provided no indication to the contrary.  The Peace Corps relies on the declarations of

---

[3] Plaintiff argues that any privacy interest in the ratings data has been abolished because the readers of the country-by-country reports are "encouraged to share the results with staff and Volunteers."  Opp'n at 12.  Courts have held, however, that the mere fact that some information may be known to certain members of the public does not negate an individual's privacy interest in preventing further dissemination to the public at large. *See, e.g., Forest Serv. Employees v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 n.3 (9th Cir. 2008); *Barnard v. Dept of Homeland Sec.*, 598 F. Supp. 2d 1, 12 (D.D.C. 2009) (collecting cases).

employees Denora Miller and Esther Benjamin for support, but these declarations do not demonstrate any likelihood that the withheld information could be linked to a particular individual.

Ms. Miller states that there were 7671 Volunteers in 2009 and 8655 in 2010, that the country-by-country and program-by-program numbers are significantly smaller, and then concludes "it would be possible for anyone familiar with the Peace Corps . . . to determine the identities of individuals . . . identified as sources of improper behavior or comments, or pointed to as criminals." Miller Decl. ¶ 33.   This is insufficient; as discussed *supra*, the "mere possibility" of a threat to privacy interest is not sufficient to justify withholding under Exemption 6. *Rose*, 425 U.S. at 380 n. 19.  Ms. Benjamin's declaration is also insufficient.  She states that disclosure of information regarding discrimination, harassment and crimes on the "smaller" country or project basis,

> [M]ay easily identify or be perceived in the host country
> as identifying specific host family/homestay family
> members, specific host country citizen members of the
> community where the Volunteer lives and works, and
> counterparts/co-workers (such as co-teachers, co-workers in
> a health clinic, or other host country colleagues with whom
> a Volunteer works), or management (such as school
> principals, health clinic directors, agricultural
> cooperative managers, and other non Peace Corps management
> personnel).

Benjamin Decl. ¶ 15.  The bare assertion that a specific individual "may easily [be] identif[ied]," unsupported by any

17

information such as the number of Volunteers in any country or program, the typical size of the host families with whom Volunteers stay, or the size of the communities or workplaces in which Volunteers are placed, is simply not enough for the agency to meet its burden to demonstrate that the exemption applies. *See, e.g., Gardels v. Cent. Intelligence Agency*, 689 F.2d 1100, 1104-05 (D.C. Cir. 1982) (agency affidavits must be reasonably specific, not merely conclusory, to show that the documents are exempt from disclosure).  Accordingly, because the Peace Corps has provided no reasonable basis to determine that any particular individuals will be identified by disclosure of the AVS questions regarding discrimination/harassment or crime victimization, the agency's invocation of Exemption 6 fails.

### b. Weighing the Privacy Interest in Nondisclosure Against the Public Interest in the Release of Records

Once an agency has established a substantial privacy interest is at stake, the Court must then "weigh the privacy interest in nondisclosure against the public interest in the release of records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46 (citations omitted).  The phrase "clearly unwarranted" within the statute "instructs the court to tilt the balance in favor of

disclosure." *Getman v. NLRB*, 450 F.2d 670, 674 (D.C. Cir. 1971).

In the FOIA context, the definition of "public interest" is limited.  ""The only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *United States Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994) (citations omitted).  The court must therefore weigh the privacy interest of Peace Corps staff in the non-disclosure of the survey questions rating their performance against the extent to which the disclosure of this information would shed light on the agency's "performance of its statutory duties" or otherwise let citizens know "what their government is up to." *Id.*

In this case, plaintiff claims the requested information will serve the public interest by revealing information about "the safety of and the support given to Peace Corps Volunteers," mandated by Congress in the Kate Puzey Peace Corps Volunteer Protection Act of 2011 ("Volunteer Protection Act"), which amended the Peace Corps Act, 22 U.S.C. § 2507.  Opp'n at 18-19. The new provisions charge the Peace Corps with providing a variety of protections for Volunteers who are victims of sexual

19

assault. 22 U.S.C. §§ 2507a – 2507d. More generally, the new provisions institute robust reporting requirements about Volunteers and Peace Corps staff. Congress has directed the Peace Corps to provide it with the results of Annual Volunteer Surveys, and also with Inspector General Reports containing, *inter alia*, "reports received from volunteers relating to misconduct, mismanagement or policy violations of Peace Corps Staff." *Id.* §§ 2507e(c) and (d). Congress further directed the President to perform a *country by country* portfolio review for each country the Peace Corps serves. *Id.* § 2507e(e) (emphasis added). The portfolio review, which must be provided to Congress upon request, "shall at a minimum include," *inter alia*, (i) an analysis of the safety and security of Volunteers, and (ii) an evaluation of the effectiveness of management of each Peace Corps post. *Id.* Finally, the new provisions of the Act require the President to submit to Congress, on an annual basis, a report including "the annual rate of early termination of volunteers, including demographic data associated with such early termination." *Id.* § 2507i.

Plaintiff argues that this legislation demonstrates the public interest in "the safety and well-being of the Volunteers, [which] depend[s], in large part, on the effectiveness of and professionalism of the Peace Corps staff." Opp'n at 19. The

government, for its part, does not acknowledge the Kate Puzey
Peace Corps Volunteer Protection Act of 2011.  Rather, it claims
that the information in the staff ratings data would not
contribute to the public's understanding of the Peace Corps'
operations or activities.  Reply at 15.  Even if there is public
interest in the information, the government claims that interest
is satisfied by the disclosure of the information aggregated at
the global or regional level.  *Id.* at 13-14.

Upon consideration, the Court concludes that there is a
significant public interest in disclosure of the responses to
questions regarding staff performance.  The 2011 Amendments to
the Peace Corps Act make clear that the Agency's mission
includes protecting the safety and security of the Volunteers,
as well as ensuring that Peace Corps personnel are effectively
managing the agency's operations at a country by country level.
These are precisely the concerns addressed in the AVS questions
relating to staff performance:  Volunteer access to health care,
support from staff in substantive areas including safety and
security, and staff awareness of and responsiveness to
Volunteers' concerns.  See AVS 2009 and 2010 Questions F2, F3,
F4, F6, F7.  Disclosure of this information would therefore
serve the very public interest central to the purposes of FOIA
by furthering the right of the public to know "what their

government is up to." *United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989).

The Court further concludes that there is a significant public interest disclosure of this information on a country-by-country basis.  As plaintiff explains, Volunteers are invited to serve in specific countries, where they are overseen by a Peace Corps Country Director "who is the executive leader of the Peace Corps for that country."   Opp'n at 11.  Moreover, plaintiff contends, it was the "safety of Volunteers, and the inadequate support some victims of violence received from the Peace Corps and the host country in which they serve," which prompted the media attention that led to the Volunteer Protection Act of 2011. *Id.* at 18.  Finally, as set forth above, Congress has recognized the importance of having access to this information on a country by country basis. *See* 22 U.S.C. § 2507e(e).  By contrast, Plaintiff has not produced any support for his claim that there is public interest in program-by-program survey results within each country.  The Court therefore cannot conclude that the program-by-program data is relevant to the public's ability to monitor whether the agency is correctly doing its job.

Through the new reporting requirements, the amendments to the Act provide that much of the information plaintiff seeks

will be publically available in future years.  However, the
information obtained in the 2009 and 2010 AVS predates the new
requirements.  Accordingly, without the data from the AVS, the
public would have more difficulty determining whether the Peace
Corps has been, and is, carrying out its mission to protect and
support its Volunteers.  *See Multi AG Media LLC v. Dep't of
Agric.*, 515 F.3d 1224, 1231-32 (D.C. Cir. 2008) (finding a
strong public interest in disclosing data the Department of
Agriculture collects to monitor its program administration).

Having found greater than a *de minimis* privacy interest and
a significant public interest in disclosure of the country-by-
country staff rating questions in the AVS, the Court must now
"balance the two to determine whether the agency has met its
burden to show that the substantial interest in personal privacy
is not outweighed by the public interest in disclosure. . .
[U]nless the invasion of privacy is 'clearly unwarranted,' the
public interest in disclosure must prevail and the agency may
not withhold the files under Exemption 6."  *Id.*, 515 F.3d at
1232 (citations omitted).

In this case, the Peace Corps' employees' privacy interests
are modest.  As set forth above, plaintiff seeks survey
responses to multiple choice questions regarding Volunteer
experience with staff performance.  The survey responses are not

23

official performance reviews or ratings, nor do they contain
names or any other personal details regarding any staff members.
By contrast, there is a strong public interest in monitoring the
Peace Corps' protection of Volunteers' safety and security,
which must necessarily include effective management within each
country.  Accordingly, release of this information would not
"constitute a clearly unwarranted invasion of personal privacy"
under Exemption 6.

   **D. Exemption 5**

   Exemption 5 allows an agency to withhold "inter-agency or
intra-agency memorandums or letters which would not be available
by law to a party . . . in litigation with the agency."  5
U.S.C. § 552(b)(6).  Citing Exemption 5's deliberative process
privilege, the Peace Corps has withheld responses to all of the
AVS questions also withheld under Exemption 6, as well as
responses to all or part of three additional questions.

   First, the Peace Corps withheld the response to question F1
(2009 and 2010 AVS), which are identical in both surveys.[4]  It
asks volunteers how prepared the host country people were for
their arrival when they first arrived at their host community,

---

[4] Unless otherwise noted, the Court takes all facts regarding the
questions and withheld responses from the Defendant's Motion,
Exhibit 10 (Table of Withheld Responses); Exhibit 1 (2009 AVS),
Exhibit 2 (2010 AVS), and Exhibit 14 (Vaughn index), as well as
Plaintiff's Opposition, Exhibit 1 (Chart of Withheld Responses).

and permits responses of "not at all," "minimally/poorly,"
"adequately," "considerably/well" and "exceptionally/very well."

Responses to question J1 (2009 and 2010 AVS), also
identical in both surveys, were partially withheld.  The
question asks how personally rewarding Volunteers found their
Peace Corps service, and provides five separate categories for
"Overall Peace Corps Service," "Community Involvement,"
"Experience with Other Volunteers," "Work with
Counterparts/Community Partner," and "Experience with other Host
Country Nationals/Individuals."  Volunteers could respond "not
at all," "minimally," "adequately," "considerably," and
"exceptionally."  Of the five categories, the Peace Corps
withheld responses as to one:  work with counterparts/community
partner.

Finally, the Peace Corps withheld the responses to
identical questions F6 (2009 AVS) and F5 (2010 AVS).  These
questions ask Volunteers whether their host country would
benefit the most if the Peace Corps program was discontinued,
reduced, refocused/redesigned, maintained as it, or expanded.
Volunteers could choose one of these options.

The deliberative process privilege "covers documents
reflecting advisory opinions, recommendations and deliberation
comprising part of a process by which governmental decisions and

policies are formulated." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citations omitted). The purpose of this privilege is to "prevent injury to the quality of agency decisions," by protecting from disclosure confidential, pre-decisional advice and counsel on matters of policy. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). In order for the deliberative process privilege to apply, the material must be both "predecisional" and "deliberative." *Public Citizen, Inc. v. OMB*, 598 F.3d 865, 876 (D.C. Cir. 2009) (citation omitted).  A document is predecisional if it was generated before the agency action was finally adopted, and deliberative if it "reflects the give-and-take of the consultative process."  *Id.* at 874 (citation omitted).

The Peace Corps asserts that each of the survey responses withheld is predecisional because (1) Peace Corps officials rely heavily on these responses in the continuing process of formulating agency strategies and policies; and (2) the surveys themselves state that they will "be used by the Peace Corps to identify best practices and implement program improvements" and "will contribut[e] to the improvement of the Peace Corps' operations and, ultimately, to the success of the Peace Corps." Def.'s Mot. at 38-39, *see also* Declaration of Alice-Lynn Ryssman at ¶¶ 10-13.  In her declaration, Peace Corps official Esther

Benjamin states that "AVS data are used in agency strategic
planning and performance activities . . . assessments of agency
performance . . . [and] internal monitoring at cohort, project,
post, regional, and global levels[.]"  Benjamin Decl. ¶ 11.
Plaintiff responds that "the generalized and aspirational agency
goals and functions" set forth in the agency declarations "are
not decisions within the meaning of the statute. . . .  Indeed,
virtually any action or information considered by the Peace
Corps conceivably could fit within this definition and thus be
withheld from public disclosure."  Opp'n at 27.

        The Court agrees with plaintiff.  Although the government
need not pinpoint a specific decision or policy in connection
with which predecisional material is prepared, the deliberative
process must be capable of some definition.  *Compare Access
Reports v. DOJ*, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (finding an
agency's study of how to shepherd a FOIA bill through Congress
to be a defined process) with *Vaughn v. Rosen*, 523 F.2d 1136,
1143 (D.C. Cir. 1975) (finding an agency's efforts to evaluate
and change its personnel policies, rules and standards too
amorphous to qualify as a process for the purposes of the
deliberative process privilege).

        In *Vaughn*, the agency asserted that reports appraising the
performance of agency supervisors were protected under the

27

deliberative process privilege because they were part of an
"ongoing [] process" in which "the agency evaluates and changes
its personnel policies, regulations and standards."  523 F.2d at
1143.  The Circuit rejected the argument, finding that the
agency could not classify its ongoing, continual task of
appraising, evaluating and making recommendations for
improvement as a seamless "process" for the purposes of the
deliberative process privilege, since such a definition places
virtually no limit on the privilege.  *Id.* at 1145.  To allow
such an expansive definition of the term process under Exemption
5, the Court reasoned, "would swallow up a substantial part of
the administrative process, and virtually foreclose all public
knowledge regarding the implementation of . . . policies in any
given agency."  *Id.*

    Defendant's arguments fail for the same reason as the
government's did in *Vaughn*.  The Peace Corps asserts generally
that the AVS surveys are part of the agency's processes for
ongoing, continuous appraisals and improvements in all manner of
agency activities, from strategic planning, to program
improvement, to assessment of agency performance and beyond.
Ryssman Decl. ¶¶ 10-13; Benjamin Decl. ¶¶ 10-13.  To permit the
Defendant to assert the deliberative process privilege for every
piece of information which could be used, in some way or

another, in the continuous process of improving the Agency would set virtually no limit on the privilege.  Exemption 5's protections do not reach nearly this far.

Further contradicting the Peace Corps' stated rationale for withholding under Exemption 5 is the fact that the agency produced most of the responses to the surveys.  The Court is particularly puzzled by this because the Agency asserts that the *entire* AVS results are used to shape agency policy and decisionmaking.  *See* Ryssman Decl. ¶¶ 10-13, Benjamin Decl. ¶¶ 10-13.  The Agency offers no explanation as to why the withheld information constitutes pre-decisional deliberations connected to an agency policy or action, while the other responses in the same documents are not.  In order to show that material is deliberative, the agency must identify "what deliberative process is involved and the role played by the documents at issue in the course of that process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F. 2d 854, 868 (D.C. Cir. 1980).  Here, the Peace Corps has failed to do either.  Accordingly, the Court finds the agency has not met its burden to demonstrate that the withheld materials are both pre-decisional and deliberative, and therefore that the documents are not properly withheld under Exemption 5.

**E. Segregability**

Plaintiff does not dispute that all reasonably segregable information was produced to him.  Even after determination that documents are exempt from disclosure, however, FOIA analysis is not properly concluded unless a court determines whether "any reasonably segregable portion of a record" can "be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "So important is this requirement that '[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.'" *Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157, 173 (D.D.C. 2011) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106)).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n. 4 (D.C. Cir. 1992) (citations omitted).

"It has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  The agency should, for example, "'describe what

proportion of the information in [the] documents,' if any, 'is non-exempt and how that material is dispersed through the document[s]." *Elec. Frontier Found.*, 826 F. Supp. 2d at 174 (citing *Mead Data Cent., Inc.*, 566 F.2d 242, 261 (D.C. Cir. 1977)); *see King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (agency must sufficiently identify the withheld material to enable the district court to make a rational decision whether the withheld material must be produced without actually viewing the documents).

Upon review of the documents, the Court finds that the defendants have made very limited, specific redactions with respect to the program-by-program survey results, and have explained in detail the basis for those redactions. *See* Miller Decl. ¶¶ 14, 16, 18, 35.  It appears that defendants have redacted only what was necessary to protect the exempt information, and defendants are not withholding any documents in full.  Accordingly, the Court finds that all segregable information in the program-by-program results of the 2009 and 2010 AVS has been disclosed to plaintiff.

## IV.  CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss is **GRANTED.** The Court concludes that the Peace Corps was justified in withholding the Volunteer responses in the program-

31

by-program breakouts for the following questions:  2009 AVS -
F2, F3, F6, F7; 2010 AVS – F2, F3, F4, F6.  The Peace Corps did
not justify withholding of any other document at issue.

Accordingly, defendant's motion for summary judgment is **GRANTED
IN PART AND DENIED IN PART**.  An appropriate Order accompanies
this Memorandum Opinion.


**Signed:    Emmet G. Sullivan
             United States District Judge
             March 29, 2013**